```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ELIZABETH WEBER, et al., on behalf of themselves and all others similarly situated,<br><br>    Plaintiff,<br>  v.<br><br>GOVERNMENT EMPLOYERS INSURANCE COMPANY, et al.,<br><br>    Defendants. | HON. JEROME B. SIMANDLE<br><br>Civil No. 07-1332 (JBS/JS)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE**, District Judge:

This matter is before the Court upon Plaintiff's unopposed motion for class certification and final approval of the proposed settlement in this class action [Docket Item 112] and Plaintiffs' application for approval of attorneys' fees and reimbursement of costs [Docket Item 113].  THIS COURT FINDS AS FOLLOWS:

1.  In this putative class action, Plaintiffs, on behalf of themselves and all others similarly situated, allege that Defendants Government Employees Insurance Company, GEICO Casualty Company, GEICO Indemnity Company, and GEICO General Insurance Company (collectively, "GEICO") failed to comply with N.J.S.A. 39:6A-4.3, which requires that insurance companies selling "standard automobile liability insurance" policies in New Jersey disclose and obtain written consent from consumers for sales of policies providing personal injury protection ("PIP") expense benefits in an amount less than $250,000.  Under New Jersey's

Automobile Insurance Cost Reduction Act ("AICRA"), N.J.S.A. 39:6A-1.1 to -35, insurance providers are required to give consumers written "notice that election of a lower benefits option, in consideration of a reduced premium, denies eligibility for the $250,000 of benefits formerly mandated," and a consumer's election of such a lower benefits option must be "affirmatively chosen in writing." Britten v. Liberty Mut. Ins. Co., 389 N.J. Super. 556, 559-60 (N.J. App. Div. 2007). Plaintiffs allege that GEICO failed to provide such notice to the members of the proposed class.

2. After considerable discovery and litigation, and following extensive arm's-length negotiations, the parties to this dispute reached a settlement agreement (the "Settlement Agreement"). The Settlement Agreement defines the Settlement Class as the named Plaintiffs (Elizabeth Weber, Patricia Pacheco, Donna Cobbs, and Sandra Rodriguez) plus all natural persons:

> (1) who were issued a New Jersey Standard Automobile Liability Insurance Policy by a GEICO entity during the Class Period [between August 16, 2004 and October 1, 2008];
>
> (2) whose policy indicated personal injury protection medical expense ("PIP") coverage limit of less than $250,000, and for whom GEICO did not possess a signed Coverage Selection Form ("CSF");
>
> (3) who submitted PIP claim(s) in excess of $10,000 to GEICO during the Class Period; and
>
> (4) whose PIP coverage limit has not already been reformed in writing by GEICO to reflect the statutory maximum of $250,000.

(Galpern Decl. Ex. 1 at 3.)  This class includes 975 persons.

3.  Under the terms of the parties' Settlement Agreement, GEICO established a program by which to handle the claims of Settlement Class members, pursuant to which class members would be compensated for medical expenses in excess of the limits provided by their insurance policies, up to $250,000, "consistent with terms of the insurance policies, as reformed, New Jersey PIP law, and GEICO's usual claims handling procedures."  (Galpern Decl. Ex. 1-C at 2-3.)  In order to participate in this program, Settlement Class members were required to submit a claim form to GEICO within the ninety-day period following the Court's preliminary approval of the Settlement Agreement, that is, by July 10, 2009, (Galpern Decl. Ex. 1-B at 4); class members who did not file their claims within this claim period would be unable to recover under the terms of the settlement and will be deemed to release all claims, known and unknown, against GEICO that have been asserted in this class action.  See Settlement Agreement § 11.1.

4.  On March 29, 2009, this Court entered an Order Preliminarily Approving Settlement [Docket Item 109], which, inter alia, directed Class Counsel to provide notice of the class action settlement to the class members (thereby initiating the ninety-day claims period, supra) and which scheduled the fairness hearing for final approval of the settlement for August 10, 2009.

On July 30, 2009, Defendants filed upon the Docket the Affidavit of Jose Fraga, Senior Director of Operations of the Claims Administrator in this matter, attesting to the Claims Administrator's efforts to provide notice to the 975 class members.  (Fraga Aff. at 1.)  Of the 975 class members, the Claims Administrator successfully provided notice to approximately 950, but was unable to provide notice to twenty-one.  (Id. at 2.)  "As of the July 10, 2009 cut-off date established by the March 23 Order, a total of 90 claims out of the 975 Settlement Class Members were received from Settlement Class members other than the 3 named representative[s] – a participation rate of approximately ten percent of the Settlement Class."  (Galpern Decl. ¶ 17.)

    5.  The Fairness Hearing for final review of the settlement herein was originally scheduled to take place on August 10, 2009.  At the August 10, 2009 hearing, the Court expressed to counsel for Plaintiffs and Defendants that it harbored concerns over the low percentage of class members who had filed claims in order to participate in the settlement.  The Court was concerned that an absent class member, through inadvertence or confusion, would, along with 90 percent of the other class members who failed to file a claim by the July 10, 2009 deadline, suffer the extinguishment of a viable claim for PIP benefits payable through participating in this settlement.  Because the proposed class

4

consists of many individuals who have incurred thousands of dollars in unreimbursed medical expenses, the consequence of an inadvertent failure to file a claim by the due date would be especially severe in this particular class action, since their right to pursue such benefits in the future under the terms of this agreement would be foreclosed.  For the reasons that follow, the Court will order that a second and final notice of the settlement, with an additional thirty-day window for class members to file claims with GEICO and thus participate in the proposed settlement, be provided to the class members who did not file claims within the initial claims period.

6.  In the context of a motion seeking approval of a class action settlement, the "District Court retains the ultimate responsibility for the protection of class members." In re Cendant Corp. Prides Litigation, 233 F.3d 188, 194 (3d Cir. 2000) (internal quotations and citations omitted).  The Court of Appeals has made clear that district courts may exercise their equitable powers, as well as the powers available to them under the Federal Rules of Civil Procedure, in carrying out this responsibility.  See id.

7.  In a related context, the court explained:

> "Until the fund created by [a] settlement is actually distributed, the court retains its traditional equity powers . . . to protect unnamed, but interested persons." Zients v. LaMorte, 459 F.2d 628, 630 (2d Cir. 1972).  A Court may assert this power to allow late-filed proofs of claim and late-cured proofs of claim.  See id.; see also

> In re Agent Orange Product Liability Litig., 689 F. Supp. 1250, 1263 (E.D.N.Y. 1988); The Manual For Complex Litig. § 30.47 at 248 (3d ed. 1995) ("Adequate time should be allowed for late claims before any refund or other disposition of settlement fund occurs.") . . . .
>
> Consequently, far from serving a merely ministerial function with respect to the disposition of a class action settlement, when parties avail themselves of the District Court to implement such a settlement, the District Court may use its traditional powers to implement the settlement fairly and in accordance with its usual role. This applies not only to its powers in equity, but also to the statutory powers granted by Congress, such as the Federal Rules of Civil Procedure.
>
> When the District Court undertakes to implement a settlement such as this, the Federal Rules of Civil Procedure are impliedly part of the package through the Court's associated orders. We do not find any fault, therefore, with the District Court's locating within Rule 6(b)(2) yet an additional source of its power to modify the deadlines here. Rule 6(b)(2) provides, in pertinent part:
>
> When by . . . order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may [enlarge the time] at any time in its discretion . . . (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect . . . .

Id. at 195.

    8. It is, moreover, widely recognized that under Rule 23(e), Fed. R. Civ. P., "[t]he [district] court has <u>complete discretion</u> in determining what constitutes a reasonable notice scheme, both in terms of how notice is given and what it contains." 7B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure Civil 2d § 1797.6 at 200) (3d ed. 2005) (emphasis added). The power to require supplemental notice is

likewise in the court's discretion, see <u>Zimmer Paper Products, Inc. v. Berger & Montague, P.C.</u>, 758 F.2d 86, 93 (3d Cir. 1985) (explaining that "[b]efore approving any distribution of settlement proceeds to class members," if the district court finds cause for concern in the provision of notice, the court may "order[] further notice procedures").

    9. Although it preliminarily approved of the notice provisions of the proposed Settlement Agreement in its March 29, 2009 Order, the Court harbors concerns over the sufficiency of the notice provisions advising of the need to file a claim and the deadline for doing so, and advising of the consequence of failing to file a claim, as reflected in the small number of class members who opted to file claim forms within the original claims period.  Of the 975 class members, 499 incurred medical expenses in excess of $15,000, and 450 of these did not file a claim form within the claims period.  (Galpern Cert. ¶ 17.) While it is conceivable that some of these class members consciously elected not to participate in the claims process established by the Settlement Agreement,[1] the low rate of

---

[1] For example, as the attorneys surmised at the August 10, 2009 hearing, it could be that some class members' medical expenses were paid by another source, such as by another insurance carrier.  It is also conceivable that by the time class members received the settlement notice, collection efforts for some unpaid medical expenses may have ceased, leaving the party who incurred the expense with a reduced incentive to participate in the claims process established by the Settlement Agreement. While such explanations may apply to some of the non-respondents,

7

response raises concerns over the sufficiency of the notice that was provided and the inadvertence of recipients who may not have appreciated what is at stake for them.

    10. In particular, having reexamined the documents that were included in the notifications that were mailed to class members, the Court is concerned that the importance of the July 10, 2009 date for filing claims may not have been sufficiently apparent to class members in the original notification materials. That is, class members reviewing the notice materials may have observed that the hearing as to class certification and settlement approval was not to take place until August 10, 2009, and these class members could conceivably have disregarded the July 10, 2009 filing deadline and assumed that further instructions would be forthcoming following the August 10, 2009 Fairness Hearing if the settlement structure was approved. Indeed, class certification itself would not occur until, at the earliest, August 10, 2009, if approved. Further, recipients may not have understood the fact that if they failed to submit a claim, they would still be bound by the settlement and their ability to pursue such a PIP-benefits claim against GEICO would be extinguished with prejudice. The Court finds that this is a sufficiently probable explanation for the low response rate as to

---

they fail to explain why others, having outstanding PIP-eligible expenses exceeding $15,000 that may be payable under the terms of this proposed settlement, would choose instead to file no claim.

justify "further notice procedures," Zimmer, 758 F.2d at 93, which, pursuant to Rules 6(b) and 23(e)(1), Fed. R. Civ. P., this Court may require of parties seeking approval of a class action settlement.

11. In making this determination, the Court has weighed the prejudice which GEICO would incur as a result of the additional provision of notice, as well as the delay of processing the pending claims for the ten percent of class members who have submitted them. In particular, counsel for GEICO represented at the August 10, 2009 hearing that it could expect to incur between $5,000 and $7,000 in administration expenses as a result of this provision of additional notice. Affording the additional opportunity for claim submission would also require the adjournment of the Fairness Hearing for approximately fifty days in order to afford an additional period within which class members could file their claims. In light of the Court's "responsibility for the protection of class members," Cendant, 233 F.3d at 194 (citation omitted), and the multimillion dollar value of the settlement herein, the Court finds that the comparatively minor expense of providing additional notice and the short-term adjournment of the Fairness Hearing are easily justified by the importance of affording non-responding class members the opportunity to file claims and participate in the settlement, or decline to do so.

9

12. Accordingly, as is set forth in the accompanying Order, the Court will require Class Counsel and counsel for the GEICO Defendants to collaborate in submitting for Court approval a Supplemental Notice to the Class notifying those class members who have not yet filed a claim that the deadline for filing a claim and thus participating in the settlement is enlarged until September 21, 2009.[2]

13. While the Court is enlarging the claim filing deadline, the Court is not reopening the period for opting out of the proposed settlement or for submitting opposition to it. The form of Notice previously received by these individuals was clear and more than sufficient to duly advise of the opt-out rights and opposition deadlines, and no such opt-out or opposition was received from any putative class member. The Supplemental Notice is required, in the Court's discretion, only for the purpose of enlarging the claim submission deadline.

---

[2] The Supplemental Notice should provide: brief descriptions of the litigation and the proposed settlement; that this second and final notice of the opportunity to participate comes at the direction of the Court; clear instructions for the execution and mailing of the claim form, to the indicated address, so that the claim is received by September 21, 2009; a clear statement of the consequences of electing not to file a claim; the fact that the opportunities to opt out of the class and to object to the terms of the settlement previously expired without any such opt-outs or objections being received; and that the proposed settlement and class certification are subject to court approval at the Fairness Hearing on September 29, 2009 at 4:00 P.M.

14. The hearing for final approval of the class settlement and for attorneys' fees and costs is adjourned to Tuesday, September 29, 2009 at 4:00 p.m.  The accompanying Order is entered.

**August 11, 2009**                                         **s/ Jerome B. Simandle**
Date                                                                   JEROME B. SIMANDLE
                                                                                        United States District Judge