IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ELIZABETH WEBER, et al., on behalf of themselves and all others similarly situated | : : : : | HONORABLE JEROME B. SIMANDLE |
|  | : : | Civil No. 07-1332 (JBS/JS) |
| Plaintiffs, | : : |  |
| v. | : : : |  |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, et al. | : : | **OPINION** |
|  | : : |  |
| Defendants. | : : |  |

APPEARANCES:

Michael A. Galpern, Esq.
LOCKS LAW FIRM, LLC
457 Haddonfield Road
Suite 500
Cherry Hill, NJ 08002
        Class Counsel

Seth R. Lesser, Esq.
KLAFTER OLSEN & LESSER LLP
2 International Place
Suite 350
Rye Brook, NY 10573
        Attorney for Plaintiff and Settlement Class

Anthony M. Sellitto, Jr., Esq.
SELLITTO LAW FIRM LLC
250 Washington Street
Suite B
Toms River, NJ 08753
        Attorney for Plaintiff and Settlement Class

Michael D. Halbfish, Esq.
TUNNEY & HALBFISH
245 Main Street
Woodbridge, NJ 07095
        Attorney for Plaintiff and Settlement Class

Daniel E. Rosner, Esq.
ROSNER LAW OFFICES
311 Landis Ave.
Vineland, NJ 08360
      Attorney for Plaintiff and Settlement Class

Michael T. Warshaw, Esq.
LAW OFFICE OF MICHAEL T. WARSHAW
10 Drs. James Parka Blvd.
Suite 206
Red Bank, NJ 07701
      Attorney for Plaintiff and Settlement Class

Michael N. Onufrak, Esq.
Edward M. Koch, Esq.
WHITE AND WILLIAMS LLP
LibertyView
457 Haddonfield Road
Suite 400
Cherry Hill, NJ 08002
      Attorneys for Defendants


**SIMANDLE**, District Judge:

## I.    INTRODUCTION

      This matter is before the Court upon Plaintiffs' unopposed

motion for final approval of the class action settlement and for

an award of attorneys' fees and costs in the matter of Weber v.

Government Employees Insurance Company, et al.   In this action,

Plaintiffs, on behalf of themselves and all others similarly

situated, allege that Defendants Government Employees Insurance

Company, GEICO Casualty Company, GEICO Indemnity Company, and

GEICO General Insurance Company (collectively, "GEICO") failed to

comply with N.J. Stat. Ann. 39:6A-4.3, which requires that

insurance companies selling "standard automobile liability

insurance" policies in New Jersey disclose and obtain written

consent from consumers for sales of policies providing personal injury protection ("PIP") expense benefits in an amount less than $250,000.

After extensive arm's-length negotiations supervised by U.S. Magistrate Judge Joel Schneider, the parties reached a settlement agreement, the approval of which is the subject of the primary motion presently before the Court [Docket Items 104 & 112].  At the initial fairness hearing for approval of class certification, the class settlement, and for Class Counsel's attorneys' fees and costs, the Court determined, in an abundance of caution, to require sending a second notice of the proposed settlement and an extension of the claim filing deadline for the putative class members, as explained in this Court's Memorandum Opinion and Order filed August 11, 2009.  The re-notification is now complete, and no opt-out requests or objections to the proposed class settlement have been received.  The supplemental arguments of counsel at the second fairness hearing on September 29, 2009 have been considered and the matters are ripe for determination.

## II.  BACKGROUND

### A.  Plaintiffs' Allegations

Plaintiffs' claims center around certain provisions of the Automobile Insurance Cost Reduction Act ("AICRA"), N.J. Stat. Ann. 39:6A-1.1 to -35, which was enacted in 1998.  In Britten v.

3

<u>Liberty Mut. Ins. Co.</u>, 389 N.J. Super. 556 (App. Div. 2007), the

Appellate Division provided a concise summary of that law and its

background:

> In the area of PIP benefits, prior to AICRA, all underwriters of New Jersey auto insurance policies were required to include PIP coverage of $250,000. With the enactment of AICRA, the Legislature added N.J.S.A. 39:6A-4.3, which provides in pertinent part:
>
> > With respect to personal injury protection coverage provided on an automobile in accordance with section [39:6A-4], the automobile insurer shall provide the following coverage options:
> >
> > . . . .
> >
> > e. Medical expense benefits in amounts of $150,000, $75,000, $50,000 or $15,000 per person per accident; . . . . The coverage election form shall contain a statement, clearly readable and in 12-point bold type, . . . that election of any of the aforesaid medical expense benefits options results in less coverage than the $250,000 medical expense benefits coverage mandated prior to the effective date of [AICRA].
> >
> > If none of the aforesaid medical expense benefits options is affirmatively chosen in writing, the policy shall provide $250,000 medical expense benefits coverage[.]
>
> [N.J. Stat. Ann. 39:6A-4.3(e).]
>
> Under this provision, the Legislature eliminated the mandatory $250,000 PIP coverage and afforded to insureds, at reduced costs, a wide range of PIP benefit levels with commensurate premiums. <u>See</u> <u>Id.</u>

<u>Britten</u>, 389 N.J. Super. at 559-60. Significantly for purposes

of this lawsuit, section 39:6A-4.3(e), <u>supra</u>, requires insurance

providers to give consumers written "notice that election of a

lower benefits option, in consideration of a reduced premium,

denies eligibility for the $250,000 of benefits formerly mandated," and requires that a consumer's election of such a lower benefits option be "affirmatively chosen in writing."  Id. at 560.

Plaintiffs herein allege that GEICO did not comply with section 39:6A-4.3(e)'s requirements.  In short, they allege as follows:

> Rather than comply with the mandates of New Jersey law, . . . Geico has had a policy and practice of deceptively selling such policies with PIP medical expense benefits in an amount of less than $250,000 without making the pr[e]scribed disclosures or obtaining the required affirmative written waivers.  Accordingly, Plaintiff Weber and numerous other consumers have been illegally sold such policies with PIP medical expense benefits in amounts less than $250,000.
>
> [] When Plaintiffs and numerous other consumers have needed the additional coverage, they have been denied it by Geico, citing the illegally procured lower PIP limits. This conduct by Geico violates New Jersey's Consumer Fraud Act, . . . pursuant to which Plaintiffs . . . are entitled to relief.

(Second Am. Compl. ¶¶ 3-4.)  The Amended Complaint alleges that Defendants violated section 39:6A-4.3(e) (Count I); breached the implied covenant of good faith and fair dealing (Count II); breached their contracts with Plaintiffs (Count III); and should be held liable to Plaintiffs under the New Jersey Consumer Fraud Act (the "CFA"), N.J. Stat. Ann. 56:8-1, et seq. (Count IV).

**B.   Procedural History**

1.   Motion Practice, Discovery, and Settlement Negotiations

After Plaintiffs filed this action, the parties engaged in
extensive motion practice and discovery.  GEICO first moved to
dismiss the Complaint on March 29, 2007 [Docket Item 5], and
amended its motion on April 2, 2007 [Docket Item 7].  In
response, Plaintiffs filed an Amended Complaint on April 1, 2007
[Docket Item 8], and, subsequently (and with the leave of the
Court), Plaintiffs filed a Second Amended Class Complaint [Docket
Item 49], which prompted the Court to dismiss GEICO's then-
pending motion to dismiss the Amended Complaint without prejudice
to renewal [Docket Item 48].

Meanwhile, the parties engaged in extensive discovery.  As
Plaintiffs represent in the brief in support of their class
certification motion, "[d]uring this entire period, the parties
engaged in document discovery during which GEICO produced
approximately 50,000 pages of documents (which were reviewed by
Plaintiffs' counsel) and the Plaintiffs started preparing to
conduct numerous depositions of GEICO's executives and employees
in Buffalo, New York."  (Pls.' Br. at 4.)

The prospect of settlement was broached initially during a
November 28, 2007 conference call with the Honorable Joel
Schneider, United States Magistrate Judge.  (Galpern Decl. ¶
4(n).)  Plaintiffs detail the extensive and contentious
settlement negotiation process that ensued thereafter as follows:

> In January 2008, the parties were planning further motion
> practice regarding documents produced and were preparing

to take Defendant's employees' depositions. On January 25, 2008, the parties attend a settlement conference with Magistrate Judge Schneider during which several different settlement scenarios were discussed[.] . . .

During January and February 2008, motion briefing continued while the parties also negotiated about possible settlement. Eventually, discovery was stayed while the parties, between themselves, and with Magistrate Judge Schneider, held numerous meetings and discussions in the winter and spring of 2008 – some of which were quite adversarial – and slow progress was achieved over a number of months[.] . . .

During the entire summer of 2008, the discussions of potential settlement proceed in earnest, as the parties negotiated each and every substantive issue. Counsel exchanged innumerable emails and telephone calls which finally resulted in an agreement in principle in August 2008[.] . . .

Only after the settlement in principle was reached was there a negotiation of fees. The details of the Settlement, the Claims processes, the post-settlement arbitration process, and the notice, all took many weeks to iron out[.] . . .

From August through December 2008, the Settlement Agreement and it accompanying documents were negotiated. The parties spent several rounds and numerous drafts negotiating the form and substance of the proposed notice and claims forms, the framework of the post-settlement arbitration process, a supplemental notice to GEICO policyholders to ensure that, going forward, they read statutory warnings and thereafter knowingly and affirmatively chose lower PIP limits, and the provisions of the Settlement Agreement itself. Concerning the specific contents of the notice – the two sides being unable to reach agreement – it took specific and further recourse to Magistrate Judge Schneider to obtain resolution of this issue . . .

On January 25, 2009, the Settlement Agreement . . . was fully executed . . . .

There can be no question that the parties were fully informed, when they met to discuss Settlement, as to the risks of continued litigation and as to the scope of the

legal and factual issues presented in the case. A review and analysis of the documents and other information gathered through Class Counsel's investigation and prosecution of this case materially assisted Class Counsel in determining the strengths and weaknesses of the case, the likelihood of obtaining a significant class recovery (if any) and ultimately in evaluating the fairness and reasonableness of the proposed Settlement. Based upon the discovery and review and pretrial preparation, Class Counsel was able to evaluate the substantial time and expense that would be required to prosecute the case further and realized that appeals would be likely even in the event of a successful resolution of any claims – individual or class. Ultimately, both parties possessed a clear understanding of the strengths and weaknesses of their respective cases and utilized that information during the course of the intensive settlement negotiations . . .

Having been engaged in multiple class action settlements over time – including many fairly significant and large cases as well as quite contentious matters – Class Counsel can state that the negotiations here were arm's-length and fiercely negotiated as any in which they have ever been involved. In fact, following the reaching of the agreement in principle, extensive negotiations continued over nearly every detail of the agreement . . .

In short, it is fair to say that in negotiating the document that ultimately became the final Settlement Agreement, there was hardly a word or a term that was not extensively negotiated.

(Id. at ¶¶ 4-9.)

> 2. Settlement Agreement Terms and Preliminary Approval

The parties executed the Settlement Agreement presently under consideration on January 25, 2009, and filed the motion for class certification and settlement approval [Docket Item 104] on February 13, 2009.  This motion was withdrawn and refiled on August 3, 2009 [Docket Item 112], deleting the late Elizabeth

Weber as a class representative and proceeding with the three
remaining representatives.  The Settlement Agreement defines the
Settlement Class as the named Plaintiffs (Patricia Pacheco, Donna
Cobbs, and Sandra Rodriguez) plus all natural persons:

> (1) who were issued a New Jersey Standard Automobile
> Liability Insurance Policy by a GEICO entity during the
> Class Period [between August 16, 2004 and October 1,
> 2008];
>
> (2) whose policy indicated personal injury protection
> medical expense ("PIP") coverage limit of less than
> $250,000, and for whom GEICO did not possess a signed
> Coverage Selection Form ("CSF");
>
> (3) who submitted PIP claim(s) in excess of $10,000 to
> GEICO during the Class Period; and
>
> (4) whose PIP coverage limit has not already been
> reformed in writing by GEICO to reflect the statutory
> maximum of $250,000.

(Galpern Decl. Ex. 1 at 3.)  According to the parties, this class
includes 975 persons.

Under the terms of the parties' Settlement Agreement, GEICO
has established a program by which to handle the claims of
Settlement Class members, pursuant to which class members would
be compensated for medical expenses in excess of the limits
provided by their insurance policies, up to $250,000, "consistent
with terms of the insurance policies, as reformed, New Jersey PIP
law, and GEICO's usual claims handling procedures."  (Galpern
Decl. Ex. 1-C at 2-3.)  The Agreement establishes a claims period
of ninety days from the date the settlement notices were mailed
within which members of the Settlement Class could submit claims

to GEICO.  (<u>Id.</u> at 1.)  The Agreement provides that "[u]pon receipt of a claim, GEICO will adjust and/or grant or deny the claim, in whole or in part, within 60 days of the [date of the Court's entry of final judgment] . . . ," (<u>id.</u> at 2), and it further provides the opportunity for coverage of claims for treatment rendered subsequent to the claims period "if additional claims are [causally] related to the medical condition, treatment, and/or diagnosis set forth in the initial claim."[1] (<u>Id.</u> at 2-3.)

The Settlement Agreement further provides various safeguards to members of the Settlement Class.  The Agreement permits Class Counsel to inspect any claim submitted by a class member to GEICO; it requires that GEICO consult with Class Counsel at the request of any class member; and it requires GEICO to provide weekly reports to Class Counsel regarding the number and value of claims filed pursuant to the program.  (<u>Id.</u> at 1-2.)  The Agreement further provides that if GEICO denies a claim in whole or in part, the denied claimant would be entitled to "an expedited binding arbitration process through Joel Schneider,

---

[1]  The agreement refers to "casually related" claims, although the parties presumably meant to reference "causally related" claims.  (Galpern Decl. Ex. 1-C at 2-3.)

USMJ, his designee(s), or such other person or persons mutually agreeable to the parties."[2]  (Id. at 3.)

As part of the parties' Settlement Agreement, GEICO has agreed not to oppose Plaintiffs' request for attorneys' fees and costs, so long as the gross sum amounted to $400,000 or less. Significantly, as Mr. Galpern explains:

> [T]he award of attorneys' fees and expenses was negotiated with Defendants' counsel only after the parties had reached agreement in principle of all the terms relating to relief for the Class. Thus, in accordance with [Plaintiffs' attorneys'] duty to the Class, in no way did [Plaintiffs' counsel] bargain away Class members' recovery rights for [their] own financial benefit.

(Galpern Decl. ¶ 24.)

On March 29, 2009, the Court entered an Order Preliminarily Approving Settlement [Docket Item 109], which, inter alia, directed Class Counsel to provide notice to the class members and which scheduled the fairness hearing for review of the class action settlement.  On July 17, 2009, counsel for GEICO, Edward M. Koch, Esq., filed upon the Docket an Affidavit [Docket Item 110] attesting to GEICO's compliance with 28 U.S.C. § 1715's requirement that notice of the settlement be served upon appropriate state and federal officials.  On July 30, 2009,

---

[2]  Under the terms of the Settlement Agreement, should the class member prevail in whole or in part in arbitration, GEICO would be required to pay "the amount of the claim, reasonable attorneys' fees and costs, and double the statutory interest rate for 2009."  (Galpern Decl. Ex. 1-C at 4.)

Defendants filed upon the Docket the Affidavit of Jose Fraga,
Senior Director of Operations of the Claims Administrator in this
matter, attesting to the Claims Administrator's efforts to
provide notice to the 975 class members.  (Fraga Aff. at 1.)  Of
the 975 class members, the Claims Administrator was unable to
provide notice to twenty-one.  (Id. at 2.)

    3.   Settlement Administration

    Of the 975 class members to whom notice of the Settlement
Agreement was sent, ninety (in addition to the three named class
representatives) filed timely claims within the ninety-day claims
period, which ended July 10, 2009.[3]  (Galpern Decl. ¶ 17.)  With
regard to the value of these claims, Michael A. Galpern, Esq.,
attorney for Plaintiffs, indicates in his Declaration:

> While the value of most claims cannot be readily
> determined until the claims for treatment are fully
> submitted and the total of medical expenses thereof are
> completely processed by GEICO, where claims' value were
> indicated, the claims' values range from a few thousand
> dollars for small claims up to several tens of thousands
> of dollars for many larger claims. Of those claims where
> values are set forth, the average value of those claims
> is approximately $39,000. As such, the 93 claims filed
> (90 Settlement Class Members and 3 Class Representatives)
> and the total settlement of this action may be worth up
> to $3.6 million (93 claims x $39,000 per claim).
> Furthermore, of the 975 Settlement Class Members, 476 or
> approximately half of the Settlement Class Members'

_____

[3]  According to the parties, two class members filed claims
after the expiration of the claims period, which GEICO has
declined to accept under the Settlement Agreement's terms.  Those
claims will be deemed timely filed as they were received before
the extended deadline of September 21, 2009.  Thus, the total
number of claims filed after the first notice was 95.

> claims fell in this range between $10,000 and $15,000.
> Of that number, 41 filed claims during the Claims Period,
> representing almost fifty percent of the Settlement Class
> Members who filed claims, and thereby justifying and
> vindicating Class Counsel's concerns for such class
> members and the negotiated class definition.

(Id.) (footnote omitted).

The Court was concerned with the relatively low response rate of 95 claims out of a potential 975 class members. As explained in the Memorandum Opinion and Order (filed August 11, 2009) [Docket Items 119 & 120], the Court exercised its discretion under Rules 6(b) and 23(e), Fed. R. Civ. P., to require re-notification to the potential class members who had not already responded to assure that all persons who could be located would again be advised of the proposed settlement and of their need to file a claim by the extended deadline of September 21, 2009. The Court thereupon approved the new form of the "Second & Final Notice of Proposed Class Action Settlement," for distribution not later than August 20, 2009. [See Order filed August 14, 2009, Docket Item 122.]

This second mailing was duly completed, identifying 859 recipients, excluding class members who had previously responded (95) or for whom no current address could be found (21) despite diligent follow-up efforts. After the second mailing, an additional 30 class members' packets were returned and new forwarding addresses could not be located after efforts by GEICO and the claim administrator. [See Supplemental Affidavit of Jose

13

Fraga, filed September 28, 2009, Docket Item 123.]  Thus, it is believed that of the 859 remaining class members, there are 829 who appear to have received the Second and Final Notice and the claims packet in the notification process of August and September, 2009.  The very last batch of Second & Final Notices was not mailed until September 18, 2009, to a group of 12 class members whose mailings had been returned due to change of address, for whom new addresses were found enabling the late remailings.

This second effort yielded a significant number of claims for benefits under this settlement, with a total of 147 claims timely received by the September 21, 2009 deadline, and 4 late claims received by September 24, 2009, and 2 additional inquiries about filing late claims, according to Class Counsel.[4]  The total of 147 claims out of an original potential class of 975 persons represents a response rate of 15.1%.  Again, no opt-outs or objections have been received, and no class member appeared at the fairness hearing on September 29, 2009, to object.

**III. DISCUSSION**

   **A.   Class Certification**

_____

   [4]  Whether to permit the late-filed claims and whether to enlarge the claims deadline for the group of 12 who were the subject of the September 18 notification are issues discussed below in Part III.C.

The Court of Appeals reviewed the Supreme Court's prescriptions regarding the certification of settlement classes in <u>In re Community Bank of Northern Virginia</u>:

> [T]he <u>Amchem</u> Court held that certification of classes for settlement purposes only was consistent with Fed. R. Civ. P. 23, provided that the district court engages in a Rule 23(a) and (b) inquiry:
>
>> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, <u>see</u> Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial. But other specifications of the Rule – those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.
>
> [<u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591, 621 (1997)] . . . .
>
> Thus, regardless of whether a district court certifies a class for trial or for settlement, it must first find that the class satisfies all the requirements of Rule 23 . . . . In making this analysis, the district court may take the terms of the proposed settlement into consideration. The central inquiry, however, is the adequacy of representation. Thus, subdivisions (a) and (b) of Rule 23 focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives. That dominant concern persists when settlement, rather than trial, is proposed.

<u>In re Community Bank of Northern Virginia</u>, 418 F.3d 277, 299-300 (3d Cir. 2005) (some internal quotations and citations omitted).

In short, the Court must satisfy itself that the Rule 23(a) and 23(b)(3) criteria are met before determining whether the settlement is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2), with the principal focus on "whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." In re Community Bank of Northern Virginia, 418 F.3d at 300 (citation omitted).

"District courts have discretion under Rule 23 to certify a class." Beck v. Maximus, Inc., 457 F.3d 291, 297 (3d Cir. 2006). To certify a class, the Court must find that the proposed class meets the prerequisites to a class action; "plaintiffs must establish that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met." In re Chiang, 385 F.3d 256, 264 (3d Cir. 2004). The Court finds that Plaintiffs have established that the criteria of Rules 23(a) and 23(b)(3) are satisfied here.

### 1. Rule 23(a)

The considerations under Rule 23(a) are satisfied in this class action. Rule 23(a), Fed. R. Civ. P., provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Where, as here, "an action is to proceed
under Rule 23(b)(3), the commonality requirement [of Rule 23(a)]
is subsumed by [Rule 23(b)(3)'s] predominance requirement."
Danvers Motor Co., Inc. v. Ford Motor Co., 543 F.3d 141, 148 (3d
Cir. 2008) (internal quotations and citations omitted).  The
following Rule 23(a) discussion accordingly accounts for the
numerosity, typicality, and adequacy factors, leaving the
consideration of commonality for the discussion of Rule 23(b)(3)
predominance, infra.  See id.

First, with regard to Rule 23(a)'s numerosity criterion, the
class at issue in this matter is sufficiently numerous for
certification.  As the Court of Appeals has explained, "[n]o
minimum number of plaintiffs is required to maintain a suit as a
class action, but generally if the named plaintiff demonstrates
that the potential number of plaintiffs exceeds 40, the first
prong of Rule 23(a) has been met."  Stewart v. Abraham, 275 F.3d
220, 226-27 (3d Cir. 2001).  The class in this case includes 975
members, (Galpern Decl. ¶ 15), easily meeting the requirements
for Rule 23(a)'s numerosity prong.

The typicality prong is likewise satisfied here.  To address
the question of typicality, the Court assesses

> whether the named plaintiffs' claims are typical, in
> common-sense terms, of the class, thus suggesting that
> the incentives of the plaintiffs are aligned with those
> of the class.  Factual differences will not render a
> claim atypical if the claim arises from the same event or
> practice or course of conduct that gives rise to the

claims of the class members, and if it is based on the
same legal theory.

Beck, 457 F.3d at 295-96 (internal quotations and citations
omitted).  Put differently, "[t]ypicality entails an inquiry
whether the named [plaintiffs'] individual circumstances are
markedly different or the legal theory upon which the claims are
based differs from that upon which the claims of other class
members will perforce be based."  Hassine v. Jeffes, 846 F.2d
169, 177 (3d Cir. 1988) (internal quotations and citations
omitted).

In this case, the named Plaintiffs' claims "arise[] from the
same . . . practice or course of conduct that gives rise to the
claims of the class members," and are based on the same legal
theory.  Beck, 457 F.3d at 295-96 (internal quotations and
citations omitted).  The named Plaintiffs allege that they, like
the members of the class, were sold automobile liability
insurance policies which did not conform with the requirements of
the AICRA.  That is, the named Plaintiffs "alleged that they
suffered harm as the result of the same . . . conduct [on GEICO's
part] that injured the absentee class members," which is
sufficient to show that their claims are typical of the class
members'.  In re Prudential Ins. Co. America Sales Practice
Litigation Agent Actions, 148 F.3d 283, 312 (3d Cir. 1998).

The final Rule 23(a) consideration is whether "the
representative parties will fairly and adequately protect the

18

interests of the class." Fed. R. Civ. P. 23(a)(4). With regard to Rule 23(a)'s adequacy prong, the Court of Appeals has explained that the district court's task is to address whether "the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." Hassine, 846 F.2d at 179. "Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975).

Both considerations are satisfied here. First, Plaintiffs' attorneys have ample experience in litigating class actions in general, and PIP insurance claims in particular. (Galpern Decl. Ex. 5.) The extensive discovery, motion practice, and settlement process in this case is itself evidence of the experience and ability of Plaintiffs' attorneys, who were well-qualified to undertake the litigation herein. See Hassine, 846 F.2d at 179. Moreover, the named Plaintiffs' interests are not "antagonistic to those of the class." Wetzel, 508 F.2d at 247. To the contrary, the named Plaintiffs, like the absent class members, purchased insurance policies which did not comply with the AICRA,

and incurred medical expenses to which they believe they were
entitled to PIP benefits.  The benefits secured to the named
Plaintiffs under the terms of the Settlement Agreement are
identical to those of the absent class members: the opportunity
to submit claims to GEICO and ultimately to be compensated for
medical expenses in excess of the limits provided by their
insurance policies, up to $250,000.  With identical interests and
an identical stake in the outcome, the named Plaintiffs are
certainly adequate representatives of the absent class members'
interests.  In summary, the class in this case easily meets Rule
23(a)'s criteria for class certification.

       2.   Rule 23(b)(3)

In addition to the requirements of Rule 23(a), a party
seeking class certification must demonstrate that certification
is appropriate under one of the subsections of Rule 23(b).
Chiang, 385 F.3d at 264.  Plaintiffs argue that certification in
this case is appropriate under Rule 23(b)(3), which provides that
a class action may be maintained if:

> the court finds that the questions of law or fact common
> to class members predominate over any questions affecting
> only individual members, and that a class action is
> superior to other available methods for fairly and
> efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

Each of these prongs is satisfied in this case.  The
predominance requirement "tests whether the class is sufficiently

20

cohesive to warrant adjudication by representation," requiring
that "issues common to the class . . . predominate over
individual issues." Danvers, 543 F.3d at 148 (internal
quotations and citations omitted).  The predominance inquiry
shares with Rule 23(a)'s commonality criterion a consideration of
whether the class members' claims are factually and legally
similar, see Johnston v. HBO Film Mgmt., 265 F.3d 178, 184 (3d
Cir. 2001), but the Rule 23(b)(3) standard is more demanding, see
In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305, 310
(3d Cir. 2008), requiring that common class issues predominate
over individual issues.  See In re LifeUSA Holding Inc., 242 F.3d
136, 145-46 (3d Cir. 2001).

Common issues in this litigation predominate over individual
issues.  As Plaintiffs argue, the central legal question in this
dispute is common to all class members' claims—namely, whether
GEICO, as a result of having sold automobile liability insurance
policies without having provided written "notice that election of
a lower benefits option, in consideration of a reduced premium,
denies eligibility for the $250,000 of benefits formerly mandated
[prior to the enactment of the AICRA]," Britten, 389 N.J. Super.
at 560, and without having obtained written waivers of the pre-
AICRA limit, may be held liable to consumers under the AICRA, the
CFA, and for breach of contract.  The resolution of this legal
question predominates over all other matters implicated by the

class members' claims, making class litigation under Rule 23(b)(3) appropriate in this case.

Moreover, Rule 23(b)(3)'s superiority criterion is satisfied here.  "The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." In re Prudential, 148 F.3d at 316 (internal quotations and citations omitted).  First, there is no reason to believe that the absent class members have a compelling "interest[] in individually controlling the prosecution . . . of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  As the summary of the claims administration process, supra, indicates, many of the claims at issue herein are for as little as a few thousand dollars, (Galpern Decl. ¶ 17), and, as is explained below, the settlement achieved herein enables the class members to recover one hundred percent of their eligible PIP medical expenses. Moreover, "the extent and nature of any litigation concerning the controversy already begun by or against class members," Fed. R. Civ. P. 23(b)(3)(B), likewise suggests that a class action is superior to individual adjudication of this controversy, as no such litigation appears to exist.  As to "the desirability or undesirability of concentrating the litigation of the claims" in this forum, Fed. R. Civ. P. 23(b)(3)(C), this is the only logical forum for the litigation of Plaintiffs' claims, as Plaintiffs are

all New Jersey residents, and the case is brought under New Jersey law.  Finally, the Court "need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal [in this motion to certify a settlement class] is that there be no trial." Amchem, 521 U.S. at 621.

In summary, each of the applicable Rule 23(a) and 23(b)(3) considerations is satisfied in this case.  The Court will grant Plaintiffs' unopposed motion for class certification.

**B.    Fairness of Settlement Terms**

Under Rule 23(e)(2), Fed. R. Civ. P., "[i]f the propos[ed settlement] would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate."  In Girsh v. Jepson, the Court of Appeals set forth the list of factors that a district court must consider when determining whether a proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2).  The Girsh factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

In re AT & T Corp., 455 F.3d 160, 164-65 (3d Cir. 2006) (citing Girsh, 521 F.2d at 157).  The Court of Appeals has made clear that district courts must be "even more scrupulous than usual in approving settlements where no class has yet been formally certified."  In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768, 805 (3d Cir. 1995).

> 1.   Complexity, Expense and Likely Duration of the Litigation

The first Girsh factor requires the Court to evaluate "the complexity, expense and likely duration of the litigation."  In re AT & T Corp., 455 F.3d at 164 (citation omitted).

> This factor is intended to capture the probable costs, in both time and money, of continued litigation.  By measuring the costs of continuing on the adversarial path, a court can gauge the benefit of settling the claim amicably.

General Motors, 55 F.3d at 812 (internal quotations and citations omitted).

Considerations of the expense and duration of further litigation weigh strongly in favor of approving the present settlement.  While the parties had engaged in extensive discovery at the time settlement negotiations commenced and concluded, the depositions of GEICO's officers and employees which Plaintiffs had intended to take would consume considerable time and resources.  Additionally, if this action were not settled, GEICO would doubtless move to reinstate its motion to dismiss, and, if the case survived that motion, would likely file a motion for

summary judgment, which would consume no insubstantial amount of the parties' resources.  See id. (likelihood of "a plethora of pretrial motions" weighed in favor of settlement approval). Should the action survive summary judgment, the subsequent "complicated, lengthy trial" and the "inevitable . . . post-trial motions and appeals," In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 536 (3d Cir. 2004), further indicate that "the probable costs, in both time and money, of continued litigation," would be considerable.  General Motors, 55 F.3d at 812.  The first Girsh factor thus weighs in favor of settlement approval.

      2.   Class Reaction

The second Girsh factor requires the Court to examine "the reaction of the class to the settlement."  In re AT & T Corp., 455 F.3d at 164 (citation omitted).  "In an effort to measure the class's own reaction to the settlement's terms directly, courts look to the number and vociferousness of the objectors." General Motors, 55 F.3d at 812.  "Courts have generally assumed that 'silence constitutes tacit consent to the agreement.'"  Id. (quoting Bell Atlantic Corp. v. Bolger, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993)); see also Lachance v. Harrington, 965 F. Supp. 630, 645 (E.D. Pa. 1997) ("Generally, if the class members do not oppose the class settlement, the court is justified in concluding that they consider it fair and reasonable").  Here, not one of the 975 members of the potential class has objected to the terms

25

of the settlement or sought to exclude himself or herself from the class.  The complete absence of objections or exclusions from any potential class member weighs strongly in favor of approving the settlement.  See Bell Atlantic Corp., 2 F.3d at 1313 n.15.

        3.    The Stage of the Proceedings and the Amount of Discovery Completed

As the Court of Appeals has explained:

> The stage-of-proceedings facet of the Girsh test captures the degree of case development that class counsel have accomplished prior to settlement.  Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.

General Motors, 55 F.3d at 813.

This factor likewise indicates that approval of the proposed settlement is appropriate.  First, the parties engaged in considerable discovery before settlement negotiations commenced – the parties agreed to a Joint Discovery Plan more than seven months before any mention was made of settlement negotiations and nineteen months before a settlement agreement was reached, (Docket Item 9 at 1), and GEICO produced approximately 50,000 pages of documents which Plaintiffs' counsel reviewed.  In this respect, the length of discovery in this case was greater than was true in cases the General Motors court cited as examples of "[s]ettlements that have survived this heightened [pre-certification] standard." General Motors, 55 F.3d at 805-06 (citing, e.g., In re Beef Industry Antitrust Litigation, 607 F.2d

167 (5th Cir. 1979), in which "settlement discussions began after six months of discovery").  Moreover, while the dispositive motions Defendants filed were ultimately stayed or withdrawn as the litigation proceeded, Plaintiffs' counsel likewise had the benefit of such motions to help shape their "appreciation of the merits of the case before negotiating."  General Motors, 55 F.3d at 813.  As this history makes clear, counsel on all sides had the benefit of significant discovery and an understanding of the risks and benefits of settlement prior to the commencement of negotiations.  The stage-of-proceeding factor thus weighs strongly in favor of settlement approval.

> 4 & 5.   The Risks of Establishing Liability and
>          Damages

The fourth and fifth Girsh factors require the Court to consider the risks Plaintiffs faced in establishing liability and damages.  See In re AT & T Corp., 455 F.3d at 164.  The Court's inquiry under these factors "attempts to measure the expected value of litigating the action rather than settling it at the current time."  General Motors, 55 F.3d at 816.  "In examining [these factors], the Court need not delve into the intricacies of the merits of each side's arguments, but rather may 'give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action.'"  Perry v. FleetBoston Financial Corp.,

27

229 F.R.D. 105, 115 (E.D. Pa. 2005) (quoting <u>Lachance v. Harrington</u>, 965 F. Supp. 630, 638 (E.D. Pa. 1997)).

This factor weighs in favor of approving the settlement.  In light of the fact that the settlement achieved herein enables the class members to recover one hundred percent of their eligible PIP medical expenses, there indeed exists a substantial risk that Plaintiffs would have fared more poorly had they elected not to settle and to proceed to trial.  That is, as the Court of Appeals has recognized, a jury trial carries an inherent risk for both sides of a case, <u>see</u> <u>In re Cendant Corp. Litig.</u>, 264 F.3d 201, 239 (3d Cir. 2001) (there is "no guarantee whom the jury would believe"), and by agreeing to a settlement pursuant to which the class members are able to recover one hundred percent of their eligible expenses, Plaintiffs are able to receive the entirety of the benefits to which they allege they were entitled with none of the attendant risks associated with a jury trial.  Electing to accept such strong settlement terms with none of the risks associated with a jury trial is rationale and sensible, and the fourth and fifth <u>Girsh</u> factors thus weigh in favor of settlement approval.

  6. <u>Risks of Maintaining a Class Action Through the Trial</u>

The sixth <u>Girsh</u> factor tests "the risks of maintaining a class action through the trial."  <u>In re AT & T Corp.</u>, 455 F.3d at

164-65.  As the Court of Appeals has explained, after Amchem,

this factor is of negligible importance:

> Because the district court always possesses the authority
> to decertify or modify a class that proves unmanageable,
> examination of this factor in the standard class action
> would appear to be perfunctory.  There will always be a
> "risk"   or   possibility   of   decertification,   and
> consequently  the  court  can  always  claim  this  factor
> weighs  in  favor  of  settlement.    The  test  becomes  even
> more  "toothless"  after  Amchem.  The  Supreme  Court  in
> Amchem  held  a  district  court  could  take  settlement  into
> consideration  when  deciding  whether  to  certify  a  class,
> and    that,    "[c]onfronted    with    a    request    for
> settlement-only  class  certification,  a  district  court
> need  not  inquire  whether  the  case,  if  tried,  would
> present  intractable  management  problems  .  .  .  for  the
> proposal  is  that  there  be  no  trial."   521  U.S.  at  ----,
> 117  S.  Ct.  at  2248.   It  would  seem,  therefore,  that  after
> Amchem  the  manageability  inquiry  in  settlement-only  class
> actions  may  not  be  significant.

In re Prudential, 148 F.3d at 321.  To the extent that "[t]here

will always be a 'risk' or possibility of decertification" in any

class action, id., this factor weighs marginally in favor of

settlement approval.

> 7.   The Ability of Defendants to Withstand a Greater
>      Judgment

The seventh Girsh factor, "the ability of defendants to

withstand a greater judgment," In re AT & T Corp., 455 F.3d at

165 (citation omitted), is a neutral factor for settlement

approval in this case.  There can be little doubt that GEICO, as

a major automobile insurer, could withstand a settlement greater

than that achieved by Plaintiffs herein.  As Plaintiffs argue,

however, "a greater judgment than the 100% compensation provided

by the Settlement would have been difficult to obtain." (Pl.'s Br. at 22.) The fact of GEICO's capacity to withstand a greater judgment cannot be considered in a vacuum without reference to the value of the settlement and the claims themselves, and in light of the fact that under the settlement the Plaintiffs are eligible to receive the entirety of the benefits to which they believe they were entitled under N.J. Stat. Ann. 39:6A-4.3, this factor does not weigh against approval of the settlement.

      8 & 9.    <u>Range of Reasonableness in Light of the Best Possible Recovery and the Risks of Litigation</u>

<u>Girsh</u>'s eighth and ninth factors require the Court to review whether the proposed settlement falls within a range of reasonableness in light of the best possible recovery and the attendant risks posed by the litigation. <u>In re AT & T Corp.</u>, 455 F.3d at 165. The essence of the Court's analysis under these prongs is to assess "whether the decision to settle represents a good value for a relatively weak case[,] . . . a sell-out of an otherwise strong case," or a reasonable value to the plaintiffs in light of the risks posed by further litigation. <u>General Motors</u>, 55 F.3d at 806. As Plaintiffs note, in assessing whether a settlement falls within this range of reasonableness, the Court may rely in part upon "the opinions of counsel," who, by virtue of the "factual investigation which was conducted by counsel over the . . . year[s] . . . prior to the parties' submission of their settlement for . . . approval," have a well-informed perspective

30

regarding the possibilities for recovery and the risks imposed by litigation.  Lake v. First Nationwide Bank, 900 F. Supp. 726, 732 (E.D. Pa. 1995).

These factors likewise weigh in favor of settlement approval.  As the preceding analysis has repeatedly stressed, the terms of the settlement offer the class members a good value for their claims, in that it permits class members to be compensated for medical expenses in excess of the limits provided by their existing insurance policies, up to $250,000, "consistent with terms of the insurance policies, as reformed, New Jersey PIP law, and GEICO's usual claims handling procedures."[5]  (Galpern Decl. Ex. 1-C at 2-3.)  That is, the settlement restores those Plaintiffs who participate in the settlement to at least as good a position as they would have been in had GEICO complied with the AICRA by providing Plaintiffs with $250,000 worth of coverage on account of the fact that Plaintiffs did not waive the $250,000 limit in writing as provided by AICRA.[6]  Enabling the class

_____

[5]  While the total value of Plaintiffs' claims cannot be estimated until GEICO processes the claim requests, the parties estimate that the total value of the settlement amounts to as much as $3.6 million.  (Galpern Decl. ¶ 17.)

[6]  Although only fifteen percent of the class members took advantage of the settlement benefit by filing claims within the claims period, there is nothing to suggest that those class members who elected not to participate did so because they were unable, as opposed to merely disinclined, to file claims.  See General Motors, 55 F.3d at 807 (explaining that "[o]ne sign that a settlement may not be fair is that some segments of the class are treated differently from others" and finding unreasonable a

members to recover one hundred percent of their eligible medical expenses obviously represents a good value for the class members' claims, and is well within the range of reasonableness.[7]  The final Girsh factors thus weigh in favor of settlement approval.

     10.  Summary

    Collectively, the weight of the Girsh factors militates in favor of approving this settlement.  Of the Girsh factors, eight weigh in favor of settlement approval, and only one – the capacity of GEICO to withstand a greater judgment – is neutral. But in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement.  Accordingly, the Court approves the proposed class action settlement as fair, adequate, and reasonable.

---

settlement in which "[p]eople of lesser financial means will be unable to benefit comparably from the settlement").  This settlement was available to class members on an equal basis, and, unlike the coupon compensation under consideration in General Motors, could be used by any class member, irrespective of that person's financial means.

    [7]  In light of the Court of Appeals' concern, in the class settlement context, over potential "collusion [between plaintiffs' and defendants' attorneys] that may have marred the negotiations themselves," General Motors, 55 F.3d at 797, it bears emphasis that "the award of attorneys' fees and expenses was negotiated with Defendants' counsel only after the parties had reached agreement in principle of all the terms relating to relief for the Class."  (Galpern Decl. ¶ 24.)

### C.  Application to Permit Late Claims

The Court must determine whether to allow four claims received from class members within three days of the September 21, 2009 deadline (claims of Weiner, Jefferies, Calavano, and Palacio), and whether to enlarge the claim period for 12 individuals who did not receive the second notice until after it was mailed to them on September 18, a few days before the filing deadline (including two class members – Goka and Pavon – who have spoken with Class Counsel within the past week).  The claims of Weiner and Jefferies were postmarked on September 21, Palacio's claim was postmarked September 23, and Calavano's claim was not postmarked because it originally lacked a postage stamp, was returned to Calavano, was re-sent with proper postage, and received by September 24.  Calavano's claim was very probably originally mailed before September 21.  Class members Goka and Pavon spoke with Class Counsel on September 23 and 24 respectively, indicating they had just received the notice and they intended to present their claims even though the deadline elapsed.  Class Counsel urged the acceptance of the late filed claims and an extension of the deadline for the group of 12 class members who received the September 18 notice, while Defendants oppose this relief citing prejudice to the Defendants and lack of excusable neglect.

The Court's equitable determination whether to permit late claims turns upon consideration of four factors for each claimant or group, namely: (1) the danger of prejudice to the other class members or the defendants, (2) the length of the delay and its effect on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the late claimant, and (4) whether the late claimant acted in good faith.  In re Elec. Carbon Prods. Antitrust Litigation, 622 F. Supp. 2d 144 (D.N.J. 2007) (citing In re Orthopedic Bone Screw Prods., 246 F.3d 315, 323 (3d Cir. 2001)).

Preliminarily, this dispute has arisen and been presented within a few days of the September 21 claims deadline, even before the Court has taken action on approving the class settlement.  There has been no delay of judicial proceedings nor of the administration of the settlement on account of these slight delays.  Likewise, there is no prejudice to the class if these late claims are permitted, as these claims are not being paid from a common fund and thus will not diminish the settlement shares of timely claimants; normally, in any event, all legitimate members of the class are presumed equally entitled to share in recovery.  In re Elec. Carbon Prods. Antitrust Litigation, 622 F. Supp. 2d at 154 (citing In re Cendant Corp. PRIDES Litigation, 235 F.3d 176, 184 (3d Cir. 2000) and Orthopedic Bone Screw, 246 F.3d at 324).

34

Prejudice to GEICO could arise merely from the fact that the four late claimants, and several (up to 12) unfiled late claimants from the September 18th group, would receive the benefit of participating in the settlement.  This fraction of late claimants is minimal compared with the 147 timely claimants, and their inclusion is marginal compared with the 975 class members who could have chosen to participate.  While GEICO had a reasonable expectation that the claims window would close on September 21, which itself was an extended deadline per the August 11 Order, above, it is also true that GEICO could not have had a precise expectation that only a specific number of claims would be filed, and in theory it risked that as many as 975 claims would be presented.

The length of delay is again minimal.  Three of the four late filed claimants originally mailed their claims on or before the September 21 deadline for delivery of claims and the fourth was two days late in mailing.  These are not impressive delays. Likewise, the group of 12 did not receive their notice, due to the need for time-consuming address correction, until the deadline was expiring and at least two of them have promptly called Class Counsel.  The delay is so slight that the matter has been dealt with at the fairness hearing, before the settlement was even approved, causing no delay in judicial proceedings or in the administration of the settlement.  To extend the claims

deadline for the group of 12 receiving the September 18th mailing, for a period until October 9th, likewise causes no undue delay.  This small group will thus have a short period – less than 20 days – to assemble their claims and mail them.

The lateness of notice provided to the group of 12 in the "Second & Final Notice," is an excusable reason for delay.  While this group may have received the first notice several months ago, it is unknown whether this is the case, and the Court previously found that a second notice was necessary to reasonably assure such receipt as well as comprehension by the potential class members.  See Opinion of August 11, 2009.  For the four late filers, neither side in this dispute has pinpointed the cause for delay, but it may lie in the fact that they had only about 30 days to gather their medical records and bills and submit them with their claim form, which may be a tall order for some individuals.  Their delays are so slight that strong justifications need not be required.

Finally, there is no evidence that these late claimants have acted in bad faith; indeed, each of the four has completed his or her form and mailed it in.  Each claims substantial unpaid medical benefits under this settlement and each went to the time and trouble to protect their claims, and the members receiving the September 18th notice will also do so.  A weighing of the equities in evaluating good faith must necessarily include an

36

appreciation of the efforts made by the late claimants, which demonstrate good faith in the present circumstances.

For these reasons, the Court concludes that there are good grounds to grant the relief sought.  The claims of Weiner, Jefferies, Calavano and Palacio will be deemed timely filed, and the period for presenting claims on behalf of the 12 persons receiving the September 18th notice (including Goka and Pavon) will be enlarged until October 9, 2009.

### D.   Motion for Award of Attorneys' Fees and Costs

The Court is called upon to examine Class Counsel's request for an award of fees and costs pursuant to Rules 23(h) and 54(d)(2), Fed. R. Civ. P.  "Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is fundamentally fair, adequate, and reasonable."  Staton v. Boeing Co., 327 F.3d 938, 963 (9th Cir. 2003) (internal quotations and citations omitted); see also General Motors, 55 F.3d at 819 ("a thorough judicial review of fee applications is required in all class action settlements"). Plaintiffs herein request a total award of fees and costs of $400,000,[8] which is substantially less than the $498,200 figure

---

[8]  This figure is composed of $383,733.31 for fees and $16,266.69 for costs and expenses.

yielded by the lodestar calculation of fees as set forth <u>infra</u>.
(Galpern Decl. ¶ 28.)

In reviewing the provision of attorneys' fees in a proposed
class action settlement, courts employ one of two approaches—the
lodestar method and the percentage-of-recovery method—depending
on the nature of the litigation.  "The lodestar and the
percentage of recovery methods each have distinct attributes
suiting them to particular types of cases."  <u>General Motors</u>, 55
F.3d at 821.

> Under the percentage-of-recovery approach, a court
> charged with determining whether a particular fee is
> "reasonable" first calculates the percentage of the total
> recovery that the proposal would allocate to attorneys
> fees by dividing the amount of the requested fee by the
> total amount paid out by the defendant; it then inquires
> whether that percentage is appropriate based on the
> circumstances of the case.

<u>In re Cendant</u>, 264 F.3d at 256.  Such an approach is employed in
common fund cases, in which "the fees paid to class counsel come
directly out of the recovery of the class."  <u>Id.</u> (observing that
"[i]n those situations, every additional dollar given to class
counsel means one less dollar for the class, regardless how a
total settlement package is formally structured").

The alternative approach, and the approach that is called
for in reviewing the application for attorneys' fees in this
case, is the lodestar method.  As the Court of Appeals has
explained:

> Courts generally regard the lodestar method, which uses the number of hours reasonably expended as its starting point, as the appropriate method in statutory fee shifting cases. Because the lodestar award is de-coupled from the class recovery, the lodestar assures counsel undertaking socially beneficial litigation (<u>as legislatively identified by the statutory fee shifting provision</u>) an adequate fee irrespective of the monetary value of the final relief achieved for the class.

<u>General Motors</u>, 55 F.3d at 821 (emphasis added). The lodestar method is the appropriate approach in this case. First, Plaintiffs' claims are brought pursuant to, <u>inter alia</u>, New Jersey's Consumer Fraud Act, which contains a "statutory fee shifting provision." <u>Id.</u>; <u>see</u> N.J. Stat. Ann. 56:8-19 ("In all actions under this section . . . the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit"); <u>see also</u>, <u>e.g.</u>, <u>Vukovich v. Haifa, Inc.</u>, No. 03-73, 2007 WL 2596547, at *2 (D.N.J. Sept. 5, 2007) (federal courts considering fee applications in CFA cases look to fee award jurisprudence under 42 U.S.C. § 1988).

Moreover, the settlement agreement at issue herein does not contemplate a common fund that would be depleted depending upon the size of the fee award. <u>See In re Cendant</u>, 264 F.3d at 256. As the description of the settlement terms, <u>supra</u>, makes plain, the settlement agreement in this case does not provide for a defined common fund to be distributed among the class members; rather, it affords all class members who filed timely claims the opportunity to be compensated for medical expenses in excess of

the limits provided by their insurance policies, up to $250,000, "consistent with terms of the insurance policies, as reformed, New Jersey PIP law, and GEICO's usual claims handling procedures." (Galpern Decl. Ex. 1-C at 2-3.)  The settlement agreement further provides for coverage of claims for treatment rendered subsequent to the claims period "if additional claims are [causally] related to the medical condition, treatment, and/or diagnosis set forth in the initial claim." (Id.)  These benefits are not readily subject to precise calculation such that a "percentage of the total recovery," In re Cendant, 264 F.3d at 256, could be discerned under the percentage-of-recovery approach; the exact value of the settlement will be difficult to quantify with precision for the foreseeable future, as it remains for GEICO to process the claims that have been submitted, and because claims for causally-related, later-occurring treatment have yet to be submitted.  The lodestar method will be employed in reviewing the fee application herein.

In setting the lodestar amount in the context of a class action settlement, as in standard fee-shifting cases, "a court determines the lodestar by multiplying the number of hours counsel reasonably worked on a client's case by a reasonable hourly billing rate for such services in a given geographical area provided by a lawyer of comparable experience." Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 199 (3d Cir. 2000).  Based

upon on their usual hourly rates, Plaintiffs' attorneys calculate
a combined lodestar of $498,200.00, (Galpern Decl. ¶ 28), the
details of which are set forth in full in the margin.[9]  In
support of their fee application, Plaintiffs likewise submit
evidence detailing the experience of the attorneys who expended
hours litigating this case, as support of the reasonableness of
these attorneys' hourly rates.[10]  (Galpern Decl. Ex. 3; Sellitto

---

[9]  The attorneys' individual hours and hourly rates, as
disclosed from the evidence they submitted in support of their
fee application, are as follows:

| Attorney/Firm | Hourly Rate | Hours Expended | Total |
|---|---|---|---|
| Locks Law Firm | | | |
| Michael Galpern | $500.00 | 283.75 | $141,875.00 |
| Andrew Bell | $450.00 | 319.50 | $143,775.00 |
| Karl Friedrichs | $400.00 | 25.25 | $10,100.00 |
| Seth Lesser | $550.00 | 104.00 | $57,200.00 |
| Pamela Lee | $150.00 | 13.50 | $2,025.00 |
| Michele Siconolfi | | | |
|    (Paralegal) | $75.00 | 65.00 | $4,875.00 |
| | | | |
| Sellitto Law Firm, LLC | | | |
| Anthony Sellitto | $400.00 | 152.50 | $61,000.00 |
| | | | |
| Tunny & Halbfish | | | |
| Michael Halbfish | $350.00 | 130.00 | $45,500.00 |
| | | | |
| Rosner Law Offices | | | |
| Daniel Rosner | $350.00 | 60.00 | $21,000.00 |
| | | | |
| Michael T. Warshaw, P.C. | | | |
| Michael Warshaw | $350.00 | 31.00 | $10,850.00 |
| | | | |
| Total | | | $498,200.00 |

[10]  Plaintiffs did not submit contemporaneous time records
detailing "how those hours were allotted to specific tasks."
Case v. Unified School Dist. No. 233, Johnson County, Kan., 157
F.3d 1243, 1250 (10th Cir. 1998); see also L. Civ. R. 54.2(a).

41

Decl. Ex. 2; Halbfish Decl.; Rosner Decl. Ex. 1; Warshaw Decl. Ex. 1.)  Plaintiffs have also submitted evidence of the unreimbursed expenses their attorneys incurred over the course of this litigation, (Galpern Decl. Ex. 2; Sellitto Decl Ex. 1), which amount, in total, to $16,226.69.[11]  Plaintiffs' attorneys do not seek compensation for the time spent in connection with the Fairness Hearings, nor for the time spent on the fee application itself, although hours reasonably spent upon a fee application are, as Plaintiffs note, compensable.  See Planned Parenthood of Cent. New Jersey v. Attorney General of New Jersey, 297 F.3d 253, 268 (3d Cir. 2002).

The Court will approve Plaintiffs' application for an award of attorneys' fees and costs.  First, in seeking $383,733.31 in counsel's fees, Plaintiffs request a substantially lower figure than is yielded by the lodestar amount, which, as the Court of

---

Defendants do not object to the reasonableness of these hours, and the Court will not require the underlying contemporaneous time records.  The Court relies upon the representations of Class Counsel, the lack of objection to the reasonableness of the lodestar calculation, and its own experience in fee applications in other class actions of similar duration, scope, and complexity, to conclude that these claimed hours and rates are correct and reasonable.  This is especially appropriate where the final fee request is more than 20% less than the asserted lodestar figure.

[11]   These expenses include filing fees, copying expenses, travel, delivery, meals, expenses for medical records, and investigators.  (Galpern Decl. Ex. 2; Sellitto Decl Ex. 1.)  Such fees have been held to be "reasonably incurred in connection with the prosecution of a large litigation."  Yong Soon Oh v. AT & T Corp., 225 F.R.D. 142, 154 (D.N.J. 2004) (citing cases).

Appeals has repeatedly stressed, is itself "strongly presumed to yield a reasonable fee," Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996).  Second, the parties' agreement with regard to attorney's fees was the product of arm's-length negotiations which did not commence until after "the parties had reached agreement in principle of all the terms relating to relief for the Class."  (Galpern Decl. ¶ 24); see, e.g., Staton, 327 F.3d at 963 ("with regard to attorneys' fees[,] . . . the presence of an arms' length negotiated agreement among the parties weighs strongly in favor of approval," even if it is "not binding on the court") (internal quotations and citations omitted).  Finally, the affidavits and submissions of Plaintiffs' attorneys, which document the attorneys' experience in this field in support of the hourly rates they charge, demonstrate that the requested expenses were "adequately documented, reasonable, and appropriately incurred."  Yong Soon Oh v. AT & T Corp., 225 F.R.D. 142, 154 (D.N.J. 2004).

## IV.  CONCLUSION

For the reasons explained above, the Court will grant Plaintiffs' motions for class certification, for approval of the class action settlement, and for an award of $400,000 in attorneys' fees and costs.  The Court will also approve the late filing of four claims and the extension of time for a group of 12

late-noticed class members to submit claims until October 9, 2009.  The accompanying Order will be entered.


**September 30, 2009**                    **s/ Jerome B. Simandle**
Dated                                     JEROME B. SIMANDLE
                                          U.S. District Judge

44